IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| REBECCA LYN BARNES, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN COLVIN, Acting Commissioner )<br>of Social Security, )<br>)<br>Defendant. ) | Case No. 13-00286-CV-W-REL-SSA |

## **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Rebecca Lyn Barnes seeks review of the final decision of the Commissioner of Social Security denying plaintiff's application for disability benefits under Title II of the Social Security Act ("the Act"). Plaintiff argues that the Administrative Law Judge (ALJ) (1) failed to adequately consider evidence of an earlier onset date and failed to address questions to a medical expert and (2) erred when he failed to find plaintiff's insomnia and resulting fatigue/excessive daytime sleepiness was a severe impairment during the relevant time period. I find that the substantial evidence in the record as a whole supports the ALJ's conclusion that plaintiff was not disabled prior to her date last insured.[1] Therefore, plaintiff's motion for summary judgment will be denied and the decision of the Commissioner will be affirmed.

## *I.    COMMISIONER'S DECISION*

On July 27, 2010, plaintiff protectively filed her current application for disability benefits. Plaintiff alleged disability since November 5, 2003 (Tr. 112-13).[2]  Plaintiff alleged

---

[1] Plaintiff cannot be found entitled to disability benefits under Title II of the Act unless her disability began prior to her date last insured. 20 C.F.R. § 404.130; Moore v. Astrue, 572 F.3d 520, 522 (8th Cir. 2009).Plaintiff's date last insured was March 31, 2005 (Tr. 117-18).

[2] Previously, plaintiff filed applications for disability benefits on September 8, 2005 and December 7, 2007, alleging disability since July 1, 2005. Both claims were technically denied at the initial level since plaintiff was not insured on the alleged disability onset date (Tr. 114). Plaintiff did not pursue her appeal rights any further.

disability due to a combination of physical and mental impairments (Tr. 133). On September 28, 2010, plaintiff's claim was denied at the initial level (Tr. 69-73). On January 5, 2012, a hearing was held before the ALJ (Tr. 28-64). On February 16, 2012, the ALJ found that plaintiff was not under a "disability" as defined in the Act through her date last insured (Tr. 8-27). On January 24, 2013, the Appeals Council denied plaintiff's request for review (Tr. 1-4). Therefore, the ALJ's decision stands as the final decision of the Commissioner.

## II.   STANDARD FOR JUDICIAL REVIEW

Section 205(g) of the Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Commissioner. The standard for judicial review by the federal district court is whether the decision of the Commissioner was supported by substantial evidence. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Mittlestedt v. Apfel, 204 F.3d 847, 850-51 (8th Cir. 2000); Johnson v. Chater, 108 F.3d 178, 179 (8th Cir. 1997); Andler v. Chater, 100 F.3d 1389, 1392 (8th Cir. 1996). The determination of whether the Commissioner's decision is supported by substantial evidence requires review of the entire record, considering the evidence in support of and in opposition to the Commissioner's decision. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); Thomas v. Sullivan, 876 F.2d 666, 669 (8th Cir. 1989). "The Court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." Wilcutts v. Apfel, 143 F.3d 1134, 1136 (8th Cir. 1998) (citing Steadman v. Securities & Exchange Commission, 450 U.S. 91, 99 (1981)).

Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. at 401; Jernigan v. Sullivan, 948 F.2d 1070, 1073 n. 5 (8th Cir. 1991). However, the

substantial evidence standard presupposes a zone of choice within which the decision makers can go either way, without interference by the courts. "[A]n administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Id. Clarke v. Bowen, 843 F.2d 271, 272-73 (8th Cir. 1988).

## III. BURDEN OF PROOF AND SEQUENTIAL EVALUATION PROCESS

An individual claiming disability benefits has the burden of proving she is unable to return to past relevant work by reason of a medically-determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). If the plaintiff establishes that she is unable to return to past relevant work because of the disability, the burden of persuasion shifts to the Commissioner to establish that there is some other type of substantial gainful activity in the national economy that the plaintiff can perform. Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000); Brock v. Apfel, 118 F. Supp. 2d 974 (W.D. Mo. 2000).

The Social Security Administration has promulgated detailed regulations setting out a sequential evaluation process to determine whether a claimant is disabled. These regulations are codified at 20 C.F.R. §§ 404.1501, et seq. The five-step sequential evaluation process used by the Commissioner is outlined in 20 C.F.R. § 404.1520 and is summarized as follows:

1. Is the claimant performing substantial gainful activity?

    Yes = not disabled.
    No = go to next step.

2. Does the claimant have a severe impairment or a combination of impairments which significantly limits his ability to do basic work activities?

    No = not disabled.
    Yes = go to next step.

3. Does the impairment meet or equal a listed impairment in Appendix 1?

Yes = disabled.
No = go to next step.

4. Does the impairment prevent the claimant from doing past relevant work?

No = not disabled.
Yes = go to next step where burden shifts to Commissioner.

5. Does the impairment prevent the claimant from doing any other work?

Yes = disabled.
No = not disabled.

## IV. THE RECORD

The record consists of the testimony of plaintiff and vocational expert Denise Waddell, and the documentary evidence admitted at the January 5, 2012 hearing.

### A. ADMINISTRATIVE REPORT

The record contains the following administrative report which shows that plaintiff earned the following income from 1993 to 2010:

| Year | Earnings | Year | Earnings |
|---|---|---|---|
| 1993 | $ 1,391.76 | 2002 | $1,527.97 |
| 1994 | 7,149.80 | 2003 | 1,027.21 |
| 1995 | 12,971.22 | 2004 | 789.72 |
| 1996 | 14,301.68 | 2005 | 822.49 |
| 1997 | 11,819.62 | 2006 | 711.99 |
| 1998 | 9,426.13 | 2007 | 876.12 |
| 1999 | 589.05 | 2008 | 1,780.82 |
| 2000 | 1,172.18 | 2009 | 2,015.68 |
| 2001 | 1,921.83 | 2010 | 333.86 |

(Tr. 115).

B.  **SUMMARY OF MEDICAL RECORDS**

As summarized by plaintiff on appeal, the medical record reflects diagnosis and treatment of multiple sclerosis.

C.  **SUMMARY OF TESTIMONY**

During the January 6, 2012 hearing, testimony was taken from plaintiff and Denise Waddell, a vocational expert

1.  **Plaintiff's Testimony**

Plaintiff testified that she was diagnosed with multiple sclerosis in 2005 and has relapses on average one or two times a year. Plaintiff described the relapses as beginning on her left side and also involving her right side. Plaintiff described pain, heaviness, and numbness. Plaintiff testified that she begins to get better on the fifth day of steroid treatment but never returns to normal (Tr. 33-38). Plaintiff reported that she was suicidal/homicidal in December of 2006 and November of 2007.

When questioned as to her abilities during the period November 2003 through March 2005, plaintiff had some problems remembering what she was like at that time. Plaintiff testified that she typically had four or five bad days a month. Plaintiff described spending about one third of the time on the sofa or in bed on a bad day with the remainder of the time spent doing chores or going back and forth. Plaintiff said that she also had problems with fibromyalgia in the Summer that reduced her good days to zero in a month. Plaintiff said that she had seven or eight really good days a month in the Spring and Fall when she felt good. Plaintiff related that she had to be careful to not overdo on good days or she would "deplete" and it would go against her. In part, plaintiff also attributed the difference between good and bad days to the amount of sleep she achieved, with the bad days precipitated by insomnia (Tr. 43-47).

## 2. Vocational Expert's Testimony

Denise Waddell, a vocational expert, testified at the ALJ's request. The vocational expert classified plaintiff's past job of secretary as skilled and sedentary (Tr. 61).

The ALJ posed a hypothetical question with a limitation to sedentary work (Tr. 61). The hypothetical individual could lift up to twenty pounds occasionally and less than ten pounds frequently; could sit for four out or eight hours and stand for four out of eight hours; could occasionally perform posturals such as balance, stoop, crouch, kneel, and crawl; could occasionally climb ramps and stairs; but could not climb ladders, ropes, or scaffolds (Tr. 61). In response to this question, the expert opined that such a hypothetical individual could return to plaintiff's past relevant work of secretary (Tr. 61).

When the hypothetical question was modified to include a need to lie down several hours during the workday or an inability to maintain concentration, pace, or attention to task for an eight-hour workday, the expert opined that there would be no work.

When the hypothetical question was modified to reflect reaching and handling limited to occasional, the expert opined that the hypothetical individual could not return to the secretary job; when the hypothetical question was modified to include a need to consistently miss one to three days of work a month, the expert opined that the hypothetical individual could not perform plaintiff's past relevant work or any other job that exists in significant numbers in the national economy; and when the hypothetical question was modified to include daily unproductive periods lasting 30 to 45 minutes, the expert opined that the hypothetical individual could not perform plaintiff's past job or any other job that exists in significant numbers in the national economy (Tr. 62-64).

## V. FINDINGS OF THE ALJ

ALJ Ronald Parks entered his decision on February 16, 2012. The ALJ found that plaintiff's date last insured was March 31, 2005 (Tr. 13). The ALJ found that plaintiff had worked since November 5, 2003, the alleged disability onset date, but the work activity did not rise to the level of substantial gainful activity (Tr. 13). The ALJ found that plaintiff, through her date last insured, had the following severe impairment: multiple sclerosis (Tr. 13-15). The ALJ found that plaintiff's impairment neither met nor equaled the severity requirements of a Listing (Tr. 15-16). The ALJ found that, through the date last insured, plaintiff retained the RFC for a wide range of sedentary work (Tr. 16-21); that plaintiff could return to her past relevant work of secretary (Tr. 21-22); and that plaintiff was able to perform other jobs existing in significant numbers in the national economy (Tr. 22). Accordingly, the ALJ concluded that plaintiff was not disabled (Tr. 23).

## VI. ANALYSIS.

### A. MULTIPLE SCLEROSIS PRIOR TO DATE LAST INSURED

Plaintiff argues that the ALJ erred by failing to adequately consider evidence of an earlier onset date. Plaintiff's cities the opinions of a treating neurologist and a treating chiropractor as supporting an earlier onset date.

Defendant responds that, since multiple sclerosis is a degenerative disease and there is no contemporaneous medical evidence as to plaintiff's multiple sclerosis on the alleged disability onset date, the ALJ based his finding that plaintiff retained the ability to perform sedentary work upon all of the evidence as a whole, including opinions of plaintiff's neurologist, nurse practitioner, and chiropractor.

In a case involving a degenerative disease such as multiple sclerosis, where a plaintiff does not have contemporaneous objective medical evidence of the onset of the disease, the ALJ

must consider all of the evidence on the record as a whole, including the lay evidence and the retrospective conclusions and diagnosis of her doctor. Grebenick v. Chater, 121 F.3d 1193, 1199 (8th Cir. 1997).

Medical source statements are medical opinions submitted by acceptable medical sources, including treating sources and consultative examiners, describing what an individual can do despite a severe impairment, specifically an individual's physical or mental abilities to perform work-related activities on a sustained basis. SSR 96-5; see 20 C.F.R. §404.1513(a) (defining "acceptable medical source"). Generally, the opinions of an examining psychologist or physician should be given greater weight than the opinions of a source who had not examined the individual. Shontos v. Barnhart, 328 F.3d 418, 425 (8th Cir. 2003).

The Eight Circuit has acknowledged that a plethora of opinions, "admittedly send mixed signals about the significance of a claimant's daily activities in evaluating claims of disabling pain" Clevenger v. Soc. Sec. Admin., 567 F.3d. 971, 976 (8th Cir. 2009); and that, for example, "[t]he ability to perform sporadic light activities does not mean that the claimant is able to perform full time competitive work." Ross v. Apfel, 218 F.3d 844, 849 (8th Cir. 2000) (citing Burress v. Apfel, 141 F.3d 875, 881 (8th Cir. 1998). Nevertheless, a claimant's activities should be considered by the ALJ, and a reviewing court should evaluate the ALJ's credibility determination, based in part on daily activities, under the substantial evidence standard. See McDade v. Astrue, 720 F.3d 934, 998 (8th Cir. 2013). In McDade, the court held that the ALJ's credibility finding was supported by substantial evidence when, among other factors, the ALJ considered that the plaintiff "was not unduly restricted in his daily activities, which included the ability to perform some cooking, take care of his dogs, use a computer, drive with a neck brace, and shop for groceries with the use of an electric cart." Id. Similarly, in Clevenger, supra, the

court held that it was "not unreasonable" for the ALJ to rely on evidence of the plaintiff's daily activities in finding that her assertion of disabling pain was not entirely credible. Id.

Here, plaintiff is alleging disability since November 5, 2003 and her date last insured was March 31, 2005; however, there is scant medical evidence as to plaintiff's medical problems prior to June 2005. On June 9, 2005, plaintiff saw a neurologist for problems with insomnia, dizziness, and double vision (Tr. 737-38). On July 1, 2005, plaintiff underwent a brain MRI that revealed numerous T2 hyperintensive lesions scattered throughout both hemispheres. The test was considered highly suggestive of a demyelinating process such as multiple sclerosis (Tr. 751). On August 17, 2005, plaintiff began treatment by Vernon Rowe, M.D., a neurologist (Tr. 726-27). In November 2005, Doug Schell, ARNP, MSCN, began treating plaintiff under the supervision of Dr. Rowe (Tr. 690). On January 9, 2012, plaintiff asked Dr. Rowe and Mr. Schell to issue an opinion as to whether they believed she was disabled between November 2003 and March 2005. They responded that since they did not begin treating plaintiff until mid-2005; the issue of disability was not raised at that time; and seven to nine years had elapsed since the period in question, they could not look back and determine whether plaintiff was disabled between 2003 and 2005. The doctor and nurse practitioner acknowledged that it was possible that plaintiff had symptoms in 1995 and that the disease began in 1995. However, as noted by the ALJ in his decision, Dr. Rowe's and Mr. Schell's historical record did not reflect whether plaintiff's "symptoms rose to a level of severity which would be considered disabling" (Tr. 919-20). The ALJ gave significant weight to their conclusion that they could not, with certainty, say one way or another whether plaintiff was disabled between November 2003 and March 2005.

The ALJ noted that multiple sclerosis is a progressive impairment, while the impairment may have been present in 1995, it need not have been disabling at that time. In Barnhart v.

Walton, 535 U.S. 212, 219 (2002), the Supreme Court held that both the impairment and the inability to work must last at least 12 months for an individual to be found disabled. Here, even if plaintiff had multiple sclerosis as early as 1995, that assumed fact is immaterial if she still was able to work. The diagnosis means nothing unless it is accompanied by an inability to work. Here, during the period November 2003 through March 2005, the ALJ found that although plaintiff may have had multiple sclerosis, that fact did not mean she was unable to work.

Accordingly, the ALJ consider other evidence of record. Although plaintiff was not treated for multiple sclerosis until 2005, she was treated for back complaints by Joseph Kappes, MS, DC, DACBN, a chiropractor, beginning in 1988. On January 17, 2012, the chiropractor asserted that plaintiff's multiple sclerosis "began manifesting itself as early as 1995 and was well substantiated by the end of 2003" (Tr. 922-27). The ALJ found that this opinion was entitled to very little weight for several reasons. First, despite the argument to the contrary by plaintiff's counsel, a chiropractor is not considered an "acceptable medical source." Rather, a chiropractor is an "other source." Cronkhite v. Sullivan, 935 F.2d 133, 134 (8th Cir. 1991); 20 C.F.R. § 404.1513. Second, the ALJ found the opinion vague and lacking in a meaningful description of plaintiff's functional capacity. The ALJ observed that the chiropractor's description of events from 1988 until 2012 confirmed the progressive nature of plaintiff's multiple sclerosis; however, the ALJ pointed out that while the chiropractor's descriptions of symptoms, severity, frequency, and duration were quite specific for the period prior to the Fall of 2003, they became more vague during the critical period: November 2003 through March 2005. The ALJ found, to the extent the chiropractor was opining that plaintiff was disabled, he was invading an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(e). Finally, the ALJ concluded that other medical evidence conflicted with this opinion.

Defendant argues that the ALJ recognized both the progressive nature of the multiple sclerosis and the lack of objective medical evidence during the critical period; accordingly, he devoted a considerable amount of time evaluating plaintiff's credibility.

The credibility of a plaintiff's subjective testimony is primarily for the Commissioner to decide, not the courts. Rautio v. Bowen, 862 F.2d 176, 178 (8th Cir. 1988); Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). If there are inconsistencies in the record as a whole, the ALJ may discount subjective complaints. Gray v. Apfel, 192 F.3d 799, 803 (8th Cir. 1999); McClees v. Shalala, 2 F.3d 301, 303 (8th Cir. 1993). The ALJ, however, must make express credibility determinations and set forth the inconsistencies which led to his or her conclusions. Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995); Robinson v. Sullivan, 956 F.2d 836, 839 (8th Cir. 1992). If an ALJ explicitly discredits testimony and gives legally sufficient reasons for doing so, the court will defer to the ALJ's judgment unless it is not supported by substantial evidence on the record as a whole. Robinson at 841.

Subjective complaints may not be evaluated solely on the basis of objective medical evidence or personal observations by the ALJ. In determining credibility, consideration must be given to all relevant factors, including plaintiff's prior work record and observations by third parties and treating and examining physicians relating to such matters as plaintiff's daily activities; the duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). Social Security Ruling 96-7p encompasses the same factors as those enumerated in the Polaski opinion, and additionally states that the following factors should be considered: Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the

individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board).

Here, the ALJ observed plaintiff received minimal treatment between November 2003 and March 2005. The ALJ found the minimal treatment inconsistent with plaintiff's allegations of disabling symptoms. Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997). ("[Plaintiff's] failure to seek medical assistance for her alleged physical and mental impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits.").

Furthermore, the ALJ cited several inconsistencies between plaintiff's testimony as to her level of disability and her daily activities. For instance, the ALJ cited plaintiff's ten-day vacation in 2005 during which she was very active in hot weather. The ALJ noted that plaintiff homeschooled her eldest child, a child with special needs, who was "demand[ing] much psychologically and physically." The ALJ observed that plaintiff had two other young children and her husband worked 68-hour workweeks. The ALJ noted that plaintiff was also active at her church and worked ten hours a week in her own private knitting business. The ALJ noted that plaintiff worked for wages, albeit at less than the substantial gainful activity level. The ALJ correctly found plaintiff's statements to treating sources contradicted her hearing testimony.

In passing, plaintiff correctly argues on appeal that minimal daily activities do not equate with the capacity to work in the labor market. Gentile v. Barnhart, 430 F. 3d 865, 867-68 (7th Cir. 2006). However, the ALJ is evaluating plaintiff's credibility. In a credibility analysis, consideration of daily activities is appropriate since allegations of pain may be discredited by evidence of daily activities inconsistent with such allegations. Benskin v Bowen, 830 F.2d 878, 883 (8th Cir. 1987).

12

The ALJ concluded that plaintiff's description of her November 2003 through March 2005 limitations was not reliable after reviewing the record, including the objective medical evidence, treatment modalities, and plaintiff's daily activities.

Plaintiff submitted numerous letters and third party function reports from friends and family regarding her limitations (Tr. 170-77, 186-92, 624-37). With great detail, the ALJ discussed and discounted the reports from friends and family members for reasons similar to those he used to discount plaintiff's testimony. The ALJ noted that many of the letters did not provide specific information regarding when plaintiff's functioning declined and to what extent. The ALJ found that the letters that provided a timeline were vague and inconsistent with other evidence in the record. In summary, the ALJ found that the same reasoning he used to discount plaintiff's testimony regarding the relevant time period, applied equally to the third party statements. Robinson at 841 (a finding concerning the credibility of third party evidence may involve the same evidence used to find a plaintiff not credible).

The administrative regulations do not require a plaintiff to be symptom-free in order to be found not disabled. See Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) (the mere presence of a mental disturbance is not disabling *per se*, absent a showing of severe functional loss establishing an inability to engage in substantial gainful activity). Even though a plaintiff has been prescribed antidepressant drugs, this is not evidence that the mental impairment was disabling. See Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989) (prescription of antidepressant drugs does not show that the claimant is disabled).

The ALJ in this case gave plaintiff the benefit of the doubt and determined that she was significantly limited prior to her date last insured in that she could perform only sedentary work.

Finally, plaintiff argues that the ALJ should have obtained medical expert testimony as to

the onset date for her disability.

In determining the date of onset of a disability, the ALJ should consider [plaintiff's] alleged date of onset, [her] work history, and the medical and other evidence of the condition. Grebenick at 1200; SSR 83-20. "[T]he date alleged by the individual should be used if it is consistent with all the evidence available." SSR 83-20. The ALJ should obtain an expert opinion from a medical advisor to determine a medically reasonable date of onset if the medical evidence regarding onset is ambiguous. Grebenick at 1200-01; SSR 83-20. The ALJ did not err in failing to obtain an expert on the matter where the evidence was unambiguous since the ALJ considered several factors including the lack of medical treatment for an extended period after the alleged disability onset date and the ALJ's finding that the individual was not particularly credible. Karlix v. Barnhart, 457 F. 3d 742, 747 (8th Cir. 2006).

I find that the ALJ correctly found that the alleged disability onset date was not ambiguous after considering the opinions from medical sources, plaintiff's testimony, plaintiff's credibility, plaintiff's treatment modalities, plaintiff's daily activities, and the third party opinions. Therefore, the ALJ did not need to obtain a medical opinion.

In summary, I find that substantial evidence supports the ALJ's finding that plaintiff's multiple sclerosis did not prevent the performance of sedentary work prior to plaintiff's date last insured.

**B.     INSOMNIA AND RESULTING FATIGUE/EXCESSIVE DAYTIME SLEEPINESS**

Plaintiff next argues that the ALJ erred in failing to find that her insomnia and resulting fatigue/excessive sleepiness was a severe impairment prior to March 31, 2005.

In response, defendant argues that the ALJ is only required to find severe those limitations that he or she finds are supported by the evidence.

At step 2 of the sequential evaluation, plaintiff must have a severe impairment or combination of impairments that lasted or is expected to last for at least twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 404.1509 and 416.920(a)(4)(ii) (describing step two) and 416.909 (describing durational requirements). A "medically determinable impairment" is an impairment that "results from anatomical, physiological, or psychological abnormalities and must be shown by "medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques." 20 C.F.R. §§ 404.1529(b) and 416.929(b). Additionally, a medically determinable impairment is "severe" if it more than minimally affects the claimant's ability to perform work-related activities. Nguyen v. Chater, 75 F.3d 429, 431 (8th Cir. 1996); 20 C.F.R. §§ 404.1521 and 416.921; SSR 96-3p. The burden of establishing a severe impairment is on the claimant. Nguyen, 75 F.3d at 430-31. Although severity is not an "onerous" requirement, it is also not a "toothless standard," and the Eighth Circuit has upheld the Commissioner's finding that a claimant failed to meet this standard on numerous occasions. Kirby v. Astrue, 500 F.3d 705, 708 (8th Cir. 2007) (citing Hudson v. Bowen, 870 F.2d 1392, 1395 (8th Cir.1989)).

The ALJ did not specifically discuss the insomnia/fatigue at step two of the sequential evaluation; however, he devoted considerable time in discussing the fatigue complaints when assessing plaintiff's RFC. The ALJ noted the absence of complaints of debilitating fatigue in the contemporaneous medical reports for the period 2002 through 2005. The ALJ concluded that the fatigue would have been listed in the medical records if it was a severe as alleged since other more minor complaints were listed. The chiropractor did not submit the underlying medical records. I find that the ALJ properly assessed the effects of insomnia, fatigue, and daytime sleepiness in the RFC.

In summary, I find substantial evidence supports the ALJ's step two analysis.

*VII.   CONCLUSIONS*

Based on all of the above, I find that the substantial evidence in the record as a whole supports the ALJ's decision. Therefore, it is

ORDERED that plaintiff's motion for summary judgment is denied. It is further

ORDERED that the decision of the Commissioner is affirmed.

  /s/ Robert E. Larsen  
ROBERT E. LARSEN  
United States Magistrate Judge

March 4, 2014  
Kansas City, Missouri